Yes, good morning, your honors. My name is Michael Robinson. I'm with the Department of Justice. I represent the United States. The two issues on our appeal are these, whether Hawaii's statute of repose for medical malpractice actions is a part of the government's waiver of sovereign immunity, and if so, whether that statute of repose may be raised for the first time in a Rule 60E motion. The answer to both questions is yes. Two circuits have addressed this issue, one in a published decision, the Fourth Circuit in Anderson and the Sixth Circuit in an unpublished decision in Huddleston, and both have held that a question. And Anderson, was that their holding, or did they ever actually reach that after they had submitted the question? Anderson was a certification case, but what the Court did in Anderson was explain its understanding of the difference between the differences between statutes of repose and statutes of limitations, for example. And it held that because a statute of repose is a substantive limitation on liability, an FTCA claim does not lie against the United States where a statute of repose would bar action if brought against a private person in State court. And that's exactly what we have here, your honor. Counsel, Judge Gould, if I could just ask you a question, please. We would certainly have that here if there's a direct appeal, but I think we have a motion for reconsideration if I'm understanding the procedure. So the issue for us is whether the statute of repose's limit affects jurisdiction. Is that right? That is correct, your honor. And I didn't understand that that other circuit court said that the statute of limitations effect was jurisdictional, but maybe it did. So that's what I wanted to ask you. The statute of repose, because, as the Hawaii Supreme Court has said, it sets an outer limit on the time for bringing suit. And if that outer limit is exceeded, extinguishes a claim. That is part of the State substantive law that limits the courts. This is the Yamaguchi v. Queens Medical Center case you're citing? This is the Yamaguchi case, which clearly describes, although it doesn't use the word statute of repose, the substantive law. Perhaps Judge Gould understands you to have answered his question, but I'm not sure you did. The question, as I understand it, was whether the Fourth Circuit case to which you refer held that this was procedural rather than substantive. Is that right? I think I was asking if they said it was a jurisdictional limit as opposed to just a limit on substantive law. It talks – Anderson talks about the statute of limitations in terms of the fact that you cannot hold the United States liable. I think that the implication of the holding is that that goes, therefore, to the sovereign immunity of the United States. And that's because it says that it cannot lie. What the Fourth Circuit says is that the claim cannot lie against the United States where the statute of repose would bar action if brought against a private person. I think that the analysis in Anderson necessarily implicates the sovereign immunity of the United States, because it says it can't lie if it's a statute of repose, and distinguished statutes of repose from statutes of limitations. I think in this case, the Court in Huddleston also clearly expressed the notion that statute – that the person must meet not only the statute of limitations in the Federal Tort Claims Act, but in addition, must also satisfy the State's substantive tort law requirements, including statutes of repose, again, clearly implicating that that's part of the waiver of sovereign immunity. Because it's a waiver of sovereign immunity, it can be raised even on direct appeal for the first time. We've – the Government raised it in this case in a post-judgment motion. That's – that's – Kennedy, does it trouble you at all that they went through an entire trial and a verdict, and finally the Government figured out that there was such a statute in Hawaii? Yes. Yes, Your Honor. That's certainly true. It's not something that – You wouldn't do it again. We wouldn't do it again if we could. Because as a practical matter, that's one of the disturbing things. You can expect a court, I think, that one of the first things it's going to think about when it's thinking about subject matter jurisdiction is statute of limitations. I mean, that – on a trial lawyer's mind, even on an appellate judge's mind, that's one of the first things that you think of. But to say that they – to say that – despite the fact that they didn't have any notion of this, that it's – it's jurisdictional and can be raised right now, indeed, you could get up and say, by the way, you don't have jurisdiction, is, as a practical matter, rather disturbing. It is troubling, Your Honor, but it – But that's the way it is. That happened in this case where it's unfortunate. But there are statute of limitations. There are sovereign immunity defenses that the government raises after – after trial, and that's part of the reason why the courts universally, including the United States Supreme Court, say that that sovereign immunity defense can be raised at any time, including for the first time on – on appeal. Let's say – let's say that it's okay for you to do that. Doesn't the Hawaiian section 657-7.3 go only to liability, not jurisdiction? Well, the court – court in Yamaguchi explained this, the two parts of it. One is a statute of limitations, which is just a procedural limitation that – that says that a plaintiff can't go forward if they don't meet it. But it doesn't extinguish the right. Then Yamaguchi described the statute of repose part of this as extinguishing the claim. Because that's an extinction of the claim, that means that even if the – if the cause of action has not yet accrued, that the claim is extinct and cannot proceed. Okay. But – but it goes to the claim. In other words, you're saying we have to analyze Yamaguchi to determine whether it extinguishes the claim. But you do agree, I gather, that Yamaguchi doesn't – and the implication of the Hawaiian statute does not deprive us of jurisdiction. Do you agree with that? I'm not sure that I understand the question, Your Honor. If you're suggesting that Yamaguchi doesn't specifically say that this is a jurisdictional bar and the Federal courts – I wouldn't have even talked about that. I'm asking whether the government's reading of the effect of Yamaguchi is that it is a jurisdictional bar, or do you view it as a liability bar? We must certainly view it as a limitation on the court's – on the court's jurisdiction, on subject matter jurisdiction. But you do think that this goes to our jurisdiction, that if we read Yamaguchi the way the government does, that neither the district court nor, for that matter, we have jurisdiction to hear it? Or are you saying we have jurisdiction to hear it, but only to dismiss it? Is that your position? You have jurisdiction to hear it, to reverse and to remand for purposes of looking at the tolling part of the statute. But this is very similar to statutory caps on non-economic damages that the court recognized in Taylor goes to the jurisdiction of the court. It's very similar to – Well, this Court has held that that sovereign immunity is jurisdictional in the nature. It held so in Adam v. Norton. It says, Because sovereign immunity is a limitation on the district court's subject matter jurisdiction, it can be discerned at any time by the district court.  It can be discerned at any time by the district court. It can be asserted at any time prior to final judgment. And that's at 636 F. 3rd at 1192 footnote 2. It says, just as I read it, and it cites a court, another Ninth Circuit case called Vasek v. United States Postal Service. Literally, because sovereign immunity is a limitation on the district court's subject matter jurisdiction, it can be asserted at any time prior to final judgment. And what it meant by final judgment is final and non-appealable final judgment. So did the Fourth Circuit case – did the Fourth Circuit case talk in terms of sovereign immunity? As I said, I don't believe that the court talked in terms of sovereign immunity, but it did say that it was – since it would impose liability on the district court, it would impose liability on the government in a different manner and to a greater extent than on a private individual under like circumstances, that it says it went to the FTCA's limited waiver of immunity. So it does talk about it in sovereign immunity terms and says that if it's applicable, if it's a substantive statute of repose, that it is part of the government's limited waiver of immunity. So, Your Honor, I did not reserve two minutes at that time for rebuttal. I have a few more minutes. Let me ask you a quick question here. In Ferris v. the United States, which, of course, is a medical kind of an issue as well, the Supreme Court did not indicate that the district court didn't have jurisdiction to render decisions. There was sovereign immunity. Correct. And it indicates – it says jurisdiction of the defendant now exists where the defendant was immune from suit before. It remains for courts. An exercise of the jurisdiction to determine whether any claim is recognizable in law and so on. Isn't that what we have here, something like Ferris? So the district court did have jurisdiction to adhere it. You're saying that the claim is extinguished by the application of the statute of repose. But it did not – I mean, I think we're talking about jurisdiction in a different way. Maybe not. Possibly not. And I think that one of the things that is a little bit confusing here is that when we talk about the government's exposure to liability, that's the statutory terms that talk about it in terms of liability. We are not suggesting that anything that goes to the merits determination of whether the government is liable is part of that – is part of the subject matter jurisdiction of the court. What we are saying, though, is that because the statute is a – because the FTCA is a limited waiver of sovereign immunity that says that you must analogize the government to a private party under the law of the State, that if the State law precludes the claim, either by the grant of an immunity, a cap on damages, or the extinction of the claim itself, that that is part of the government's waiver of sovereign immunity and therefore goes to the subject matter jurisdiction of the court. Again, I guess – I guess depending on how we look at this, to me, having jurisdiction gives us the ability to hear the matter in the first place. But if the government has not waived sovereign immunity, then the plaintiff can get no relief. But the Court nonetheless hears it. And I think your perspective is, and I'm not saying you're wrong, is that if the statute of repose says they can get no relief, that in effect ab initio there is no jurisdiction to award a monetary damage against the United States. Is that correct? Correct. And one way of looking at this, Your Honor, would be to say, okay, the FTCA grants gives the grant of sovereign immunity. It limits that grant to a certain set of circumstances. Sometimes the State substantive law will only go to a portion of that. For example, the cap on non-economic damages. Or it looks in certain circumstances, a State law – a State may say that you cannot recover for – cannot cover tort damages for emotional distress, for example. In those States where the Court may have jurisdiction ab initio to hear the Tort Claims Act case, that jurisdiction is limited to – by the fact that the State law does not allow the award of non-economic damages or the award of damages for emotional distress. Well, you're – you wanted to save some time. We're going to give you two minutes when you come back, because we were asking you questions that took you over that. Thank you, Your Honor. So we'll hear now from the closing counsel. May it please the Court. Mark Bennett with Judy Pavey and Brandy Buin for Felice and Suila Mamea. In this collateral attack on a final judgment, plaintiffs should prevail for three reasons. First, the United States has raised its fact-based defense too late. Second, Congress did not intend to incorporate any State time limitations period into the Tort Claims Act, regardless of the 21st century label for those claims. And third, Section 657-7.3 is a statute of limitations in any case. The first point, which I think the counsel for the government has parsed over, is this is not a direct appeal. The government took its appeal from the judgment in this case too late. Its appeal was dismissed. This case, this matter, is not before this Court on direct appeal. This case is before the Court with a collateral attack on a judgment which has become final because the United States, in addition to raising this claim after judgment, failed to take a timely appeal. Even if this matter isn't direct. I'm sorry. Just break that down a little bit for me. Give me a timeline as to when that happened. Yes, Your Honor. The United States took its appeal in November of last year. Immediately this Court issued an order to show cause as to why the appeal from the judgment itself was untimely. The United States conceded the appeal from the judgment was untimely, and this Court issued an order dismissing the appeal from the judgment and said that the only thing that could be considered by this Court was the appeal from the denial of the Rule 60 motion, which renders this a collateral attack. So even, Your Honor, if the United States is right on jurisdiction, and we believe they are not, the law is simply different for analyzing their claim. We cited at page 12, note 6 of our brief, the Kocher case from the Eighth Circuit. We've supplementally brought to the attention of the Court the Delta Foods case from the D.C. Circuit. And even if jurisdiction is raised, if it's raised in a collateral attack, the question is, was there any arguable basis for jurisdiction? Is the district court in effect usurping jurisdiction by taking a case where there's no possibility of jurisdiction? In this case, we're in its answer. E.R. at 170, the United States conceded jurisdiction but for the Tort Claims Act statute of limitations. In its final pretrial statement, document 67 below, it conceded the district court's jurisdiction, and we're even now. They don't ask the court to dismiss the case. They ask the court to send it back for a factual determination of the tolling provision. This is not a case where the district court has usurped jurisdiction. So it can't be. Just a quick question for you. You mentioned that in document 67 that the government conceded jurisdiction. Can the government be stopped, in effect, on jurisdictional issues? No, Your Honor. But the question is, on a collateral attack, is there any arguable basis for jurisdiction? And the fact that the government throughout conceded it is certainly evidence that there was an arguable basis for jurisdiction, especially when, even now, they're not saying to the court, dismiss. They're saying send it back for a factual determination, which clearly means that if the facts come out one way even under the government's theory, the court not only had jurisdiction to hear the case but to award damages. So if there's a fault that lies here, even beyond not raising it in a timely fashion in the district court, it's allowing the judgment to become final. So even if the court were inclined to consider the government's argument, there's no reason to do it in a case here where the government forgot to take a timely appeal. Beyond that, Your Honor, the Rule 60, which requires that the government raise defenses in a timely manner, applies to the United States just as to any other litigant. In the Yellow Cab case in the U.S. Supreme Court from 1951, the government made exactly the same argument they made here. It doesn't matter what the rules of civil procedure say. We have immunity. And the Supreme Court said no. In Section 411 of the original Tort Claims Act, as well as when the rules of civil procedure were promulgated as applicable to all civil cases, the government finds itself bound by the rules of civil procedure. This is simply could be because the government submitted no declaration or argument no declaration below as to why it didn't raise this. A decision not to raise a fact-specific defense that might not succeed and might have adverse litigation consequences is not the same as failing to raise a sovereign immunity as a matter of law defense. The government's argument here is that if the Attorney General and the head of the didn't want to raise a defense because it would have adverse litigation consequences, because in the facts of this case, they didn't want the trier fact concentrating on what the doctors told Mrs. Mamea, and they would rather have them concentrating on what Mrs. Mamea should have known, that they're entitled to make that litigation to not raise a fact-specific defense, and then after trial, if they lose, get an automatic second bite at the apple. And Rule 60 says the exact opposite. Rule 60 says that if you come to the court after judgment and raise a claim that you could have raised before, you can't just show inexcusable neglect. You have to show excusable neglect. And this Court has said exactly the same thing in the Resnick case, which we cited from 1961, where a party came to the court after judgment with a witness, a newly sworn witness, a person who lived in a city jurisdiction, clearly went to jurisdiction, person lived in Montana, not California, say. And the Court said, yes, it goes to jurisdiction. Yes, you can raise it after trial, but if it's a new witness, you have to show due diligence in your lack of bringing it to the court in a timely way. And just like in this case, the United States can't just show neglect. It has to show excusable neglect. But even – and it has waived its sovereign immunity for the rules of civil procedure. There's no reason the Court should ever reach the merits in this case when the United States chose not even to offer the district court an explanation for failing to raise this. And the United States's position is prejudice is irrelevant. Felice Mamea, this summer, as we pointed out in our brief, suffered an intracranial bleed and may never be able to testify again. Judge Kobayashi found that this case has brought the Mameas to the brink of suicide. The government's position is prejudice doesn't matter. Every witness who could bear on the tolling provision could have died, and it doesn't matter. We can bring this whenever we want. And the government's statement here that they're not saying this doesn't go to any liability defense is not what they said in their brief. At page 14 of their reply brief, they said the Court lacks jurisdiction in any case in which a private individual would not be liable. Anything that goes to liability goes to jurisdiction, and therefore, according to the government's argument, they can raise it at any time. The reason that's not so, and this, again, is a fact-specific argument, is because Rule 60, to which the government is subject, says it is not so. So I don't want to interrupt your train of thought here, but you're, of course, directly contradicting what the government's answer was to my question of, even if you look at the statute of repose, if that's what it was, that went to liability, not jurisdiction. It absolutely goes to liability, Your Honor. And if you read it, and it doesn't take a technical reading, what the section says, which is in the same sentence as the 2-year statute, it says that you can't sue after 6 years as long as you've disclosed any act, error, or omission upon which the action is based and which is known to the medical actor. It is no more and no less than a normal liability defense. But, Your Honor, this issue of jurisdiction has already been settled by the Supreme Court and by this Court in a way contrary to the government in response to the exact arguments the government now made. In Feres, the government made this exact argument. It's jurisdictional. There's no public-private analog for military members suing, and thus there's no jurisdiction in the district court. The court of appeals are here. And the United States Supreme Court specifically rejected that and said, no, it doesn't go to jurisdiction. It goes to the test of allowable claims. What Your Honor has said is liability. But perhaps even more to the point, in the air transport case in 1955, which went to this Court, the government made even more directly the exact same argument they make now. They raised after trial on appeal, although it was a direct appeal, a claim that they hadn't raised before the district court in either Seattle or Alaska and said that because the government isn't liable, you have no jurisdiction. And this Court specifically rejected that claim, saying the Supreme Court in Feres said, no, it doesn't go to jurisdiction. It goes to allowable claims, and this has been settled since Feres. So even if we weren't dealing here with a collateral attack, but as opposed to just something that had been raised after trial, both the Supreme Court and this Court have already said it's not jurisdictional. It's just a matter of whether you as the government are liable or not, and that's not the same thing. So bottom line is they can't make a — they can't do this on collateral attack. It's done. But even if you get to the merits, they lose because the Supreme Court and our Court has already decided the issue. It's not jurisdictional. Yeah. Your Honor, I don't want to lose sight of the fact that on their main point, even if you reached it, they're simply wrong with respect. When these — when the Congress adapted the Tort Claims Act, adopted the Tort Claims Act in 1948, and then changed the statute of limitations in 1949, it studied the limitations periods in each of the 48 states. In fact, if you go to the 1949 U.S. CCAN, I discovered it wasn't in Westlaw. If you actually go to the book, there's a chart in the House Committee Report where they list each of the 46 — each of the 48 states and each of the five limitations period in each state for every kind of tort there was. And they said, we've looked at them all. We've looked at 200 statutes of limitations, and we've decided that we want a 2-year statute of limitations to govern all cases under the Tort Claims Act, irrespective of whether a State has picked a longer period or a shorter period. And the idea that the Congress, in 1949, if someone had raised their hand and said, but in one of the States, there are two limitations periods, one with the discovery rule, which is the 2-year period in Hawaii, and one without, we want the one without the discovery rule to govern Federal claims, the Congress would have looked at them with respect like they were nuts. We looked at 200 statutes of limitations. We've never heard of anything called the statute of repose. And we have made the decision that there is one and only one limitations period for Federal Tort Claims Act cases, and that is the 2-year period which we have adopted. That's the 2-year with discovery, right? 2-year with discovery. And this Court, in the Poindexter case in 1981, with respect, again, to the government's argument, rejected the exact same merits argument the government is now making. The government said in Poindexter, if you don't use this 1-year statute, we will not be in the same place that a private individual will be. 1-year workers' comp statute, the claim is extinguished. You should apply it because otherwise you're not putting us in the same place as a private individual. And this Court said in Poindexter, you've missed the point. The point is that Congress has allowed you all State defenses, but none going to a time period. The Congress has explicitly spoken and said, we have looked at what's just, we have looked at what's fair, and we've decided that 2 years is the right number, regardless of whether in some form a State has adopted a 1-year period. So we believe that on the merits, the Huddleston case and the Anderson case, and all the other appeals, neither of them reached, discussed the preemption issue. One of them is unpublished. One of them is just a certification. But we would suggest that the answer they reached is wrong. Finally, Your Honor, this is not, if the Court got to this final question, a statute of repose. If there is one hallmark that has to be of a statute of repose, it would have to be that it affords a defendant repose. This statute affords a defendant no repose. The tolling provision isn't a fraudulent concealment tolling provision, because Hawaii has a separate one in Section 657-20. This particular provision says it's 6 years if you have disclosed every act, error or omission upon which the claim is based and which is known to the medical actor. It really is, in essence, a doppelganger of the discovery rule. This tolling provision is so broad that it provides no one any repose. And so even if there were for some reason in a matter of statutory construction to decide that the conduct. Kennedy, is that the sort of question that we might, if we get to it, certify to the Hawaiian Supreme Court? Absolutely, Your Honor. And we've suggested that if the Court has any doubt, if the Court were to reject our first four arguments and get to, is this a statute of limitations or a statute of repose, we would respectfully suggest that the Court do what the Fourth Circuit did and certify it to the State court. Finally, Your Honor, Judge Kobayashi did not abuse her discretion in finding that this was an affirmative defense that was waived. Rule 60, which is what the government brought its claim under, Your Honor, requires extraordinary circumstances and manifest injustice. The only extraordinary circumstances here are the government raised a claim after judgment. They didn't raise it in a pragmatically sufficient time to avoid prejudice, which the Taylor case requires. The only manifest injustice would be reversing this judgment, which the Mameas secured after years of litigation. We respectfully ask the Court to affirm. Thank you very much for your argument. We'll hear a rebuttal from the government, and I think we should be giving two minutes, so. Thank you. First of all, this is not a collateral attack on jurisdiction. It was raised before the end, before appeal on the merits. Why didn't you appeal? We appealed the merits. Your Honor, there are any number of reasons why the government doesn't appeal on the merits, and part of that may be that it's because of the standard of review. But the fact that we didn't appeal on the merits does not make this a collateral attack, because we raised sovereign immunity. Wait, wait, wait. How can you, if you don't appeal on a direct appeal, how can anything else that affects the appeal be anything but a collateral attack? Because, Your Honor, if you look at the case that they cited in their 28-J letter, for example, the Republic of Ghana case, what that court said is, you can raise sovereign immunity before the district court, which we did. You can raise it for the first time on appeal. And in that case, the country of Ghana did not raise it in the district court or the court of appeals, but what it did was dismissed its case, dismissed its appeal, and then filed a collateral motion after the jurisdiction over the case had ended. This, the raising of the statute proposed as a limitation on the government's The other thing is that rule six, that the government cannot be equitably estomped from raising sovereign immunity defenses like the excusable neglect requirement. The sovereign immunity is allowed, the government is allowed to raise sovereign immunity at any time during the proceedings before the final judgment. And I would suggest- The proposing counsel cited Yellow Cab and a few other cases that, if I understood incorrectly, that would be to the contrary of what you just said. Do you disagree with that? I would disagree with the fact that the issue that you can raise, and this Court in the Adam case that we cited on brief, says that when the issue goes to the sovereign immunity of the United States, it can be raised at any time, including for the first time in a post-judgment motion or on appeal. And I'd ask my colleagues to do it. Do my colleagues have further questions? If not, we thank the counsel. I think we appreciate your arguments. Did you have another question, Judge Gould? No. Okay. Thank you very much. Thank you both for your argument. The case just argued is submitted.
judges: Sack, Gould, Smith